We will proceed to our first case this morning. It is United States v. Bellamy, number 18-3189. Counsel, you may proceed. May it please the court. This is my first argument in this court and I'm a little nervous. With that being said, I'd like to make six very succinct points at the beginning of this argument before I get in too far. The first is that the video evidence shows no high-capacity magazine, despite the government ignoring the video evidence in their brief. Mr. Bellamy made no admissions that he possessed a magazine or that he attached a magazine or that he had a magazine in close proximity. He did not plead to any magazines. No witnesses provided any statement as to magazines. There was no mention of magazines until law enforcement conducted the search. There was no scientific test that was conducted that provides a link between the magazines and Mr. Bellamy. And there were five other people in and out of the house after Mr. Bellamy was ejected from the premises 12 hours prior to the search. In this case, I think... So those are strong factual issues. What, however, is the standard for our review? The district court concluded that it was with a magazine, high-capacity magazine, present. So that was a factual finding by the court in a sentencing proceeding, which they have to decide by a preponderance of the evidence. So that's the... I mean, I'm not... What you've just said, if one of the cases that came before me as a district judge, might very well carry the day. But I'm very concerned about whether it's enough to carry the presumptions here. I understand that, Your Honor. I think what we have here is... There are two reasons why I think that... Let's start with the legal standard. Normally, the legal standard is conclusions of law are reviewed de novo and factual findings are given extreme deference. And there is a clearly erroneous standard for those. We have a clearly erroneous standard. And the district court, further, only has a civil standard of preponderance. So we have to say that his preponderance finding was clearly erroneous. And I think in this circumstance where the evidence was presented in a cooperative manner via stipulation of the evidence coming in and the counsel being able to make any fair arguments from that evidence, we've got a situation where the district court did not have any of the reasons that usually underpin why a clearly erroneous standard is there for findings of facts. Well, it didn't have any of the five or six things that you said were not present, but you didn't mention the one thing that was present, which was that there was a magazine found in close proximity. Correct. I will get to that in half a second. And I think the trial judge or the district court did not make any... did not observe any witnesses. The whole reason for listening to witnesses is observing their demeanor. That's the underlying basis most of the time for why the clearly erroneous standards. Counsel, you're going back to the evidence, and I just want to make sure I understand your answer to Judge Ebell's question about the standard of review. Are you saying that the standard of review as to whether the district court correctly found that there was a magazine present is clear error, clearly erroneous, or is it de novo? It's got to be one or the other. I believe it's de novo in this situation because the district court did not observe any witnesses or any of the reasons. Well, no, I understand. I understand that. I'm just interested in the standard of review. I think the standard for this case is this court does not need to give due deference to the findings of the trial court, and with many of these issues, the findings of the trial court, some of them were legal conclusions, and some were factual findings. Do you have some authority for that? I cited it. Because the government cites this case, U.S. v. Shipley. In that case, I think it was Judge Gorsuch, now Justice Gorsuch, wrote the opinion, and he said because the district court's factual finding is itself legally sufficient to support the Senate's enhancement, we may reverse only if the finding is itself clearly erroneous. I do not believe that that case was presented on stipulated facts, and I did cite a case in my brief that is Sears v. Bennett, which is in cases which are stipulated in the district court did not observe the witnesses, an appellate court should evaluate and draw conclusions from the evidence without deference ordinarily afforded to the trial court's findings of fact. Sears v. Bennett? And that's 645 F. Second, 1365 at page 1370 from this court in 1981. Thank you. And secondly, some of the district court's findings that underlie this issue are truly conclusions of law. In particular, the district court said, well, Mr. Bellamy, the gun was found in your closet in your bedroom. Your is a finding, a legal finding of who possessed those things, and I think that is erroneous in this circumstance because of two things. It wasn't a finding. Well, it was his bedroom, though, wasn't it? It used to be his bedroom, I think is the distinction here. Well, okay, there's sort of two points in time. Yes. There's the point at which the search and seizure occurred, but there's also the morning leading up to the point where he was kicked out of the house. That is correct. And if I understand the government's theory, it's really at that point in the morning that they're arguing that he possessed the magazine, or there was one in proximity. And at that point in the morning, that was his bedroom and it was his closet, correct? It was his bedroom and it was his closet at that point in time. That is not disputed anywhere. What is disputed is that there is any evidence of a magazine at that point in time. There is no evidence that a magazine was there at that point in time, which I think the only case on point anywhere in the entire country is the Aravalo case, which was decided by this court, and it's in the federal appendix and not a published opinion. And in that case, I think with the way they set the standard there, they knew that the firearms and the high-capacity magazines were in factory packaging when the owner possessed them and the thief stole them. The thief talked about the high-capacity. He didn't know that they were high-capacity magazines, but he said the firearms were still in the original packaging with magazines on them at the time I sold them to the defendant. And prior to that time, the ATF saw a photograph that the roommate of the defendant had that showed the same high-capacity magazines on there in factory packaging. So we have, depending on how you count them and how they're intertwined, we have three to six points of evidence where we see those magazines, and we know that the defendant ultimately possessed them because of the testimony. What is your alternative version to the district court interpretation? In other words, you acknowledge that he had the rifle. Yes. And you acknowledge that the rifle was in his bedroom, his former bedroom, 12 hours before as well as some of his identifying materials. Correct. And so is it your view that with these other people coming into the house, someone took the magazines up or put one in a dresser and one on the firearm? That's one of the possible interpretations. And the district court erred by not finding a preponderance of the evidence that that's what happened? Well, I don't think the district court needs to find a preponderance of the evidence that that's what happened. I think the other side of it is that based on the evidence here, we only have a third of the evidence that was present in the Aravalo case, where the Aravalo case said that circumstantial evidence may be used in this manner. And we have three fixed points in time in Aravalo where we know that they were present, and then the district court in that case extrapolated. In this case, we could talk about Mr. Spalding. He was a methamphetamine addict. He left the house after he ejected Mr. Bellamy from the house. He left on a bicycle. You see him coming back. I watched 12 hours of video from four different angles. It took me over 50 hours with the stops and pauses, and I counted the people that went in and out of the house. And the last person that went in the house with Mr. Spalding is carrying a large object from the back of the truck. I don't know what it is, but it looked like it might be a piece of furniture. So are people moving into this room already? Did Mr. Spalding, you know, take the big bedroom back? He threw Storm out. You saw the sign on the first door. The first thing that law enforcement encountered was a sign on the front door that says, Storm Bellamy does not live here anymore. You have no business here whatsoever. You know, it's a circumstance where, you know, the facts in this case are nowhere near close to the facts in Aravalo, and the facts in this case, when you add them up, there was insufficient evidence to find by a preponderance that a magazine existed. Was there any monetary value to the bullets that were found, the shells? There were no fingerprints found, no DNA. Did these guys have evidence one way or the other about whether he had that magazine there and knew about it? There is a box of empty ammunition in the shared trash for the house. Right. And was there anything linking him to that box? There was nothing linking him to that box. It was in shared trash. Okay. That's all I need to know. There is no packaging for any magazine in that trash. Law enforcement went and pulled trash three weeks in a row, and it was the two weeks before Mr. Bellamy was seen carrying the firearm into the house and the one week after he was seen carrying the firearm in the house, and there was no magazine packaging in there. And even more than that, the entire video for that time, I didn't have time to watch that much video as a CJA appointed counsel. I watched 50 hours of video already. I didn't have time to watch a month's worth of video, but that video was there. If Mr. Bellamy were on that video carrying the magazine in the house, sure as heck the government would have presented that to the trial court. They didn't. There's no video showing Mr. Bellamy with a magazine. There is no evidence, period, showing a magazine prior to the ejectment. Just no one, none of the witnesses, not Mr. Spaulding, not Ms. Harris, not anyone the police interviewed can testify or testified, period, or mentioned a magazine. The only time that we know a magazine was actually present in the residence  I'd like to reserve the rest of my time for rebuttal. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the court. My name is Jared Magan. I'm an assistant United States attorney for the District of Kansas. I think the standard of review really centers on the issue of whether or not the lower court's decision and its factual findings were clearly erroneous under the circumstances of this case. This case presents a somewhat unique circumstance because the facts that the defendant is arguing are essentially facts that don't exist, forcing the government into essentially proving a negative. In this case, he's saying that, yes, I agree that there was a magazine attached to this firearm when law enforcement found it twelve hours after I left the house. But, government, you cannot prove that in that twelve hours when I was evicted that someone did not come into this house and put that magazine in. You do agree, though, that it was the government's burden on the issue. Absolutely. And the government . . . Showed by a preponderance . . . Right. . . . that the magazine . . . that he had the magazine . . . Well, there was the magazine attached or within proximity. Right. In page seventeen and eighteen of our brief, Judge Matheson, we lay out the facts, the eleven facts as we established that largely he lived there. There was evidence or indicia of evidence of his occupying that bedroom. He had a birth certificate, other items. The . . . Judge Bell, to get to your question on the ammunition itself that was found in the trash can days earlier certainly fit that magazine. There was no evidence directly linking him to that other than the box of ammunition was in the trash that they had seized days earlier. But it's the only firearm in the house that actually holds that type of ammunition. There were no other firearms in the house that could carry that type of ammunition, so it certainly linked to the firearm. Your point of evidence on that is that that tends to negate the possibility that one of these other people added the magazine on the day after he was dismissed, kicked out of the house because he would have had no purpose. Whoever bought that ammunition would have had no purpose to buy it in that quantity . . . Correct. . . . had there not been a magazine. And I would add . . . But that's the way ammunition is sold in large boxes like that. It is. So even if you wanted even one piece of ammunition, you would have to buy the whole box of it. So how does it add anything to whether there's a magazine involved or not? Because the magazine attached to the firearm was at full capacity. There was a round in the chamber. So we know that there was a number of rounds that were already in the firearm and the magazine that was connected to it. But here's the other, I think, almost more salient point there is, is that there was evidence, stipulated evidence, that both he and Mr. Spaulding had some fear that someone would come into the house, that something bad might happen. And he gives Mr. Spaulding another firearm for protection. He gives him the Sig Sauer firearm that's listed in the indictment. So that leaves Mr. Bellamy, who is in fear, presumably, with a firearm. And it begs the question, why would you give a functional firearm to someone else? You're still in fear. Why would you have a firearm that doesn't have any magazine attached to it? That's fanciful. It's almost completely implausible under the circumstances that you would keep a firearm that is completely dysfunctional because there's no magazine attached to it. It also begs the question of why would you buy a firearm simply to have a firearm without the actual magazine that goes along with it? Again, these are simply common facts that are understood under the circumstances of this case. And largely with any sort of rational understanding of firearms, there would be no purpose in buying an AR-15 without a magazine. It's completely dysfunctional under those circumstances. Could it be fired by a single load without a magazine at all? I don't know this particular firearm, but most firearms would provide for that. You could insert a round. So when you say there's no purpose, there might have been a purpose. There could be. You could insert a singular round. So the evidence does not support that statement that it was a useless weapon without a magazine. Or bullets. Correct. Yeah. But it sort of gets back to the issue of where the defendant puts the government in its position of trying to knock down these straw man arguments by essentially saying, government, you have to come up with some proof that this magazine was attached to this firearm 12 hours earlier. Well, the fact remains is it was attached to it, and there was an additional magazine in the dresser drawer. Robert, would you agree that you need the standard of review to be clear error to prevail? It is clear error. That wasn't my question. Okay. But yes, you're correct. Do you need it to be clear error to prevail on this appeal? Right. Okay. Now, why is it clear error? When we review convictions for sufficiency of the evidence, we review those issues de novo. So why is it clear error? I know you have Shipley, and then Mr. Balancio mentioned his case, Sears v. Bennett. But could you spend a few minutes addressing this? Why is it clear error? Why should we be confident that it's clear error? I think to some degree because, remember, the overall, well, to back up, we're looking at a procedural issue. So it's a guidelines issue that's procedural in nature. So it's abuse of discretion at its peak. And so from there, as judges, as you indicated in the Arvelo-Magana case, you laid it out exactly. It says the challenges are under abuse of discretion, the legal conclusions are de novo, and the guideline, we review the factual findings for clear error. And cites to, of course, what we cite to in our opinions, the Mosey decisions, Gantt, any number of opinions talk about the issue of the factual findings have to be for clear error. I think there's some confusion, though, because I did find a case which somewhat led to the idea that the court looks at it in somewhat of a de novo standard under United States v. Anderson. And this is not a case that we cited. This was simply what I was looking at to confirm what our review standard was. They used that term de novo. This was at 674 Fed Appendix 799. This was a 2017 case. The quote there was that the defendant had argued that the district court's findings of facts. Is that a 10th Circuit unpublished opinion? It is. Unpublished. But to the point, it finished off the sentence and says that our review is de novo. Now, I think it's fair to say that the court's going to look at the legal conclusions, and it knows it has to look at the legal conclusions de novo, but the deference standard that it gives to the lower court, because the lower court is reviewing the evidence directly, and in most instances under those circumstances, it's going to give an amount of deference to determine for clear error. This seems to me to be, I mean, just almost a pure factual question. This case is. This case is. It's hard for me to see how this could morph into a legal question. I'm sorry? It's hard for me to see how this case could morph into a legal question, but I think the evidence is the question is simply factually was or was not there a magazine attached to that weapon at the time that this defendant had possession of it. And that's certainly the government's position that it must be under clear error because the language that this court uses throughout clear error analysis is the permissible and plausible language. Were there facts elicited below that led the court to render a decision that is both plausible and permissible in light of the entire record? And this court uses that language throughout, which suggests that it is giving the lower court a great deal of deference in determining whether or not it viewed the evidence in a way that is permissible and plausible. And under the circumstances here, we certainly argue that the clearly erroneous standard is the proper standard for, in this case, what is really just a factual determination as to whether or not that magazine was attached to that firearm 12 hours earlier. I guess I'm just not following your argument about not having to prove a negative. It seems to me that you're not trying to do that at all. The argument is that if the magazine was there 12 hours later, one could infer that it was there 12 hours earlier. Isn't that really what you're saying? That is our position. What our position is, or at least the argument that I'm trying to set forth here, is that the defendant's arguments are such that the government has to prove somehow or disprove the idea that someone came into the house during that 12-hour time frame and placed that magazine in it. Essentially, he has set up the idea that because you cannot prove that the magazine wasn't there 12 hours earlier or was attached 12 hours earlier, anything could happen in that 12-hour span. We agree with that. Anything could happen. But our position is that all of the arguments that could possibly happen or all the facts that could possibly even occur are so fanciful under the circumstances of this case that the only conclusion to draw that the lower court drew was that that magazine was attached to the firearm because there just simply is no other logical explanation for it. Does it have to be attached? No, it does not. It could have been in proximity, but I think it's important to understand that the attachment goes back to the issue and the larger fact that both he and Mr. Spaulding believed that they were in some type of danger. Remember, the type of activity that they were involved in was criminal activity. There were people in and out of the house. They set up a surveillance system to suggest that he would give Mr. Spaulding a firearm, but he himself not keep a functional firearm. It seems rather odd under the circumstances, which, again, leads back to the issue that the firearm did, in fact, have that magazine attached to it 12 hours earlier. It's hard to find a scenario under the circumstances where a judge could find, and this court would say it's both permissible and plausible to conclude, that someone came into that house with a magazine independent of any other firearm, just happened to have a magazine that just happened to fit that firearm and then attached it to it for what reason? Again, as we say in our brief, more likely than not, if Mr. Bellamy is evicted from the house, it seems more likely that they would take his property and sell it, not sort of set him up. I take it you didn't see anything in the surveillance video that would indicate that the people who were coming into the house during that 12-hour period were bringing in something that might look like a magazine? Judge, to be candid, I was not the AUSA on the lower court proceedings. The AUSA has moved on to another district, and so I did not review any of the evidence. The only thing that I can say is, to my reading of our record, there was nothing to suggest that there was any video evidence that the government reviewed that showed a physical or someone holding one of the magazines to this particular firearm. So there is nothing to that degree that we presented to the lower court to demonstrate that at some point Mr. Bellamy actually had the magazine itself. Are you saying that you win no matter what the standard review is, as opposed to saying you win only if it's clear evidence? I think if this court even looks at a de novo, under that theory, that the evidence in this case, the only permissible inference or conclusion to draw from this case is because the magazine was attached to it, was that it was there 12 hours earlier. The court would essentially have to determine that the government simply didn't disprove these myriad facts that are almost infinite that you could come up with, that something occurred in that 12-hour period to suggest that this was attached to it. There was no facts that any of those things happened. The only facts that the defendant seems to put forward... The defendant that the appellant opened his argument with, here are six possibilities. The only fact that seems somewhat arguable is that there were a number of people in and out of the house. Yeah, but that's not his assertion. His assertion was that one of them brought in a magazine or modified the gun in some way. Yeah, that's simply a theory of his, that that's a possibility. There's no fact of that. No, there's no factual evidence of that at all. And given the lifestyle that these individuals lived, it seems a bit of a stretch to suggest that someone, again, brings in a magazine independent of any other firearm that just happened to fit that particular gun. It's more likely than not that this magazine was, of course, attached to the firearm, that it came with the firearm, or that he had one and had two that actually fit the firearm. The defendant agreed that that was his gun. He did. He doesn't disagree with anything up to the point. Is there any evidence that each gun requires a different kind of magazine? I don't believe that there's anything in the record, Judge Abell, that got to that point. I assume that if the court remanded for further factual finding, the ATF experts would certainly establish whether or not this— The record is that there's no evidence that there's anything unique about a magazine for this gun. Not that I could tell, no. That's all I want to know. No. Unless the court has any further questions, again, our position is that the court should apply a clearly erroneous standard and under the facts of this case, the lower court did not err in finding that this magazine was attached. Thank you, Your Honor. Thank you, counsel. We have some rebuttal time. Yes, Your Honor. I think, in some regard, this is akin to a chain of custody. And so the government's got a burden to prove that the object was in the same condition at the two different points in time. I'm not saying they need to disprove my theories, and I did not say that in my brief. However, the government is saying, hey, it's just fancy that people would have come in here and done anything. And the government then said it's more probable that they would have been looking to sell this gun. And, you know, that's one of the things that I put out there, that these are meth addicts. Two of these people were owed money by Mr. Bellamy.  This is not a case where it was an isolated building where no one went in and out, like if it was Mr. Bellamy's sole apartment that he had the key to. So what about that? You have meth addicts coming in, and the only explanation for one of them bringing the magazine is that there had been communication with the defendant about jointly doing this firearm or whatever. Why isn't that good enough for relevant conduct? Not with the defendant. There's no evidence of that. The evidence is that they had communication with Mr. Spalding. No, I understand that, but you're making the point that five people came into the house. Yes. And that one of those people may have brought a magazine. Brought it or grabbed magazines from other locations in the house and brought them into that room. So presumably you wouldn't just bring a magazine unless you knew about the firearm. Yeah. And Mr. Spalding knew about the firearm. He led the law enforcement directly to it. $500 was owed to Ms. Harris, who was there, and Mr. Spalding told the police that he was owed money by Mr. Bellamy also. So who's he looking to sell the firearm to? I don't know. Here's my question. Here's my question. I understand that you're saying one of these other people, including Mr. Spalding, may have been the true possessor of the magazine. Yes. Only after the defendant was evicted did the magazines go into the room and be attached to the firearm in the nightstand or wherever it was. But if the defendant . . . here's my question. If the defendant knew that he was going to have a firearm and wanted a magazine and had communicated with any of these people, including Mr. Spalding, and said, hey, I've got a firearm, we just need a magazine, it would fall within the relevant conduct if that person did bring it over after he'd been evicted, wouldn't it? I believe under 1B1.3A1A, the standard for all relevant conduct would be that my client would have had to commit it or he would have had to act in concert with another or willfully cause the magazine either to be attached or in close proximity. That's the standard for all relevant conduct. So I would say yes, and there is no evidence that he communicated that to anyone, and that would be the government's burden to prove. Could I just . . . one other quick question. Was there any evidence that Mr. Spalding or any of the people who were coming into the house were tipped off and knew that this search was coming later in the afternoon? There was no evidence that anyone knew about the search, and coupled with that, they were doing the search to find drugs and possessing and dealing against my client, and none of that was found. Thank you. That answers my question. Thank you very much. The case will be submitted.